# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**ROSEMARY GONZALES PERALES a/k/a ROSEMARY GONZALES,**

      **Plaintiff,**

**v.**

**YES! COMMUNITIES, INC.,**

      **Defendant.**

**CIVIL NO. SA-12-CA-450-PM**

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum opinion and order is entered.

---

[1] Docket nos. 6 and 7.

# TABLE OF CONTENTS

I.      Jurisdiction
II.     Procedural History
III.    Statement of Undisputed Facts
IV.     Issues
V.      Summary Judgment Standard
VI.     Discussion
        A.      Defendant's Motion for Leave to File First Amended Answer
                1.      summary of arguments
                2.      analysis
        B.      Defendant's Motion to Strike Portions of Plaintiff's Summary Judgment
                Evidence or, in the Alternative, to Reopen Plaintiff's Deposition
        C.      Defendant's Motion for Summary Judgment
                1.      sex discrimination
                        a.      summary of arguments
                                i.      defendant's motion
                                ii.     plaintiff's response
                                iii.    defendant's reply
                        b.      standards
                        c.      analysis
                                i.      introduction
                                ii.     hostile work environment claim
                                        A.      harassment that affects a term, condition, or
                                                privilege of employment
                                        B.      vicarious liability
                                                1.      Johnson
                                                2.      Lopez
                                iii.    *quid pro quo* claim
                2.      retaliation
                        a.      summary of arguments
                        b.      analysis
                3.      intentional infliction of emotional distress
                        a.      summary of arguments
                        b.      analysis
        D.      Defendant's Request for Oral Argument
VII.    Conclusion

# I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 28 U.S.C. § 1367(a).

# II. PROCEDURAL HISTORY

Plaintiff Rosemary Gonzales Perales ("plaintiff") initiated this case when she filed her original complaint on May 9, 2012, naming defendant Yes! Communities, Inc. ("defendant").[2] Plaintiff alleges, without specification, she "was subjected to sexual harassment by the upper management at her place of employment;" defendant "failed to take an[y] action" after she brought complaints to it; she was relocated but "the sexual harassment continued, with the management making demands to see her underwear, and to kissing her frontally;" "[a]s a result of the continued harassment" of defendant and its employees, plaintiff became depressed and suffered from anxiety; and "[d]ue to her complaints to management of sexual harassment, [plaintiff's employment] was terminated on August 26, 2011."[3]  Plaintiff appears to assert four claims against defendant: (1) under the heading "sexual harassment," that defendant (a) "intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's sex," (b) "intentionally classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to male employees similarly situated," and (c) "sexually harassed Plaintiff" and "knew or should have known of the harassment, yet

_____

[2]  Docket no. 1.

[3]  Id. at 2-3.

failed to take prompt remedial action;" (2) under the heading "constructive discharge," that defendant "made the working conditions so intolerable that Plaintiff felt compelled to resign her position," "[a] reasonable person in the same position would have also felt compelled to resign," and plaintiff suffered damages for which she sues; (3) under the heading "intentional infliction of emotional distress," that defendant "intentionally or recklessly created and or conscious[]ly failed to take the appropriate[] action to not create a hostile work enviro[n]ment for the Plaintiff," "Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress," and plaintiff suffered damages for which she sues; and (4) under the heading "retaliation," that defendant "instituted a campaign of retaliation which included treating her differently th[a]n other co-workers and eventually terminatin[g] her employment," the retaliation was "due to Plaintiff exercising her rights by opposing a discriminatory practice," and plaintiff suffered damages for which she sues.[4]  Plaintiff seeks recovery of damages for "[d]epression and anxiety;" attorney's fees; back pay and interest; costs; "emotional pain;" past and future "[m]ental anguish;" past and future medical care and expenses; past and future "loss of earnings;" and "loss of benefits."[5]  Plaintiff also seeks reinstatement "to the position and pay grade [she] held but for the unlawful employment actions of Defendant," and "such other and further relief to which the Plaintiff may be entitled at law or in equity."[6]  Plaintiff's complaint includes a jury demand.[7]

---

[4]  Id. at 3-4.

[5]  Id. at 4-5.

[6]  Id. at 5.

[7]  Id. at 6.

Defendant filed its original answer on June 11, 2012, generally admitting and denying the allegations of the original complaint, and asserting the affirmative defenses of: "no acts or statements were discriminatory," "non-retaliatory acts," "discretionary authority," "failure of proof," limitation of damages, "punitive damages barred," "anti-discrimination policy & procedures," "proximate cause," failure to mitigate, and "pecuniary losses."[8]  Defendant's answer pleads that plaintiff "take nothing by way of her claims;" for judgment for defendant; defendant recover its costs, attorney's fees and expert fees; and "such other and further relief, at law or in equity, to which it may be justly entitled."[9]

The parties filed their consents to Magistrate Judge jurisdiction,[10] and on July 25, 2012, the District Judge transferred and reassigned the case to the docket of the undersigned.[11]  On August 1, 2012, the undersigned entered the parties' agreed, proposed scheduling order,[12] which has been amended.[13]  As amended, the scheduling order required: discovery to be completed by April 30, 2013; mediation to occur on or before June 17, 2013; and dispositive motions to be filed by April 30, 2013.[14]  On November 7, 2012, plaintiff filed her expert designations.[15]

---

[8]  Docket no. 3.

[9]  Id. at 4.

[10]  Dockets nos. 6, 7.

[11]  Docket no. 8.

[12]  Docket no. 10.  See docket nos. 4 and 9.

[13]  Docket nos. 14 and 18.  See docket nos. 13 and 16.

[14]  Docket nos. 14 and 18.

[15]  Docket no. 12.

Defendant filed its motion for summary judgment on April 30, 2013, and plaintiff filed a response on May 14, 2013.[16]  Defendant filed an opposed motion for leave to file an amended answer on May 17, 2013;[17] plaintiff filed a response on May 23, 2013;[18] and defendant filed a reply in support on May 30, 2013.[19]  On May 21, 2013, defendant filed a reply in support of its motion for summary judgment, and a request for oral argument on its summary judgment motion.[20]  On May 22, 2013, defendant filed an "opposed motion to strike plaintiff's improper changes to her deposition transcript, or alternatively, to re-open plaintiff's oral deposition,"[21] and plaintiff filed a response on May 28, 2013.[22]

### III.  STATEMENT OF UNDISPUTED FACTS

The following statement of facts is taken from defendant's motion for summary judgment.[23]  Unless otherwise indicated, plaintiff does not dispute the factual statements:

Defendant is "a company that operates manufactured home communities."[24]  During her employment, plaintiff worked at two different communities: Springfield Meadows first, and

---

[16] Docket nos. 19 and 20.

[17] Docket no. 22.  See docket no. 21 and text-only docket entry dated May 22, 2013.

[18] Docket no. 28.

[19] Docket no. 30.

[20] Docket nos. 23, 24, and 25.

[21] Docket no. 27.

[22] Docket no. 29.

[23] Docket no. 19.

[24] Id. at 2.

Creston Ridge after a transfer.  Plaintiff complains of the conduct of two of defendants'
employees: Michael Johnson ("Johnson"), the manager of Springfield Meadows,[25] and Bert
Lopez ("Lopez"), the manager of Creston Ridge.[26]

Plaintiff began working for defendant on June 16, 2009 "as a salesperson/assistant
manager at the Springfield Meadows community."[27]  The handbook contains an "equal
opportunity policy" at the front, expressly states that unlawful harassment is prohibited, and
instructs employees on how to report alleged harassment.[28]  Plaintiff read and understood the
handbook, and "understood that she had an obligation to report any conduct that she thought
violated company policy as outlined in the Handbook."[29]  Defendant conducts sexual harassment
training at least every two years for employees, and plaintiff attended such training on August 17,
2009 and February 10, 2011.[30]

Plaintiff captured in mobile telephone audio recordings examples of Johnson's conduct
on two days.[31]  Plaintiff complained about Johnson's conduct to co-workers.  One of plaintiff's
co-workers, Vickie Roberts, reported Johnson's conduct to Randal Brooks ("Brooks"), regional

---

[25] Id.

[26] Id. at 5.

[27] Id.

[28] Id. at 2.

[29] Id.

[30] Id.

[31] Id. at 3.

manager for defendant and Johnson's supervisor.[32]  Brooks conducted an investigation, "including interviews of all of the pertinent employees."[33]  As a result of the investigation, Brooks separated Johnson and plaintiff by transferring plaintiff to Creston Ridge, "issued a reprimand to Michael Johnson and wrote a performance correction notice."[34]  At the time, plaintiff lived in the Creston Ridge community, and her position, salary, and commissions did not change with the transfer.[35]  After her transfer, plaintiff had no more contact with Johnson and reported no more problems with him, but did have some complaints about Lopez, the manager of Creston Ridge.[36]

Plaintiff began to feel stress and anxiety in October 2010, after she was transferred to Creston Ridge.[37]  She went on short-term disability leave on April 26, 2011, and then on long-term disability leave.[38]  Plaintiff was donated paid time off so "she would not immediately lose income.  [Defendant] continued paying her commissions while she was on leave."[39]  Plaintiff did not return to work, and defendant terminated plaintiff's employment on August 25, 2011.[40]

---

[32] Id. at 4, and appendix ("app.") at APX0092 (Brooks affidavit ("aff.") at 1).

[33] Id. at 4.

[34] Id. at 4-5.

[35] Id.

[36] Id. at 4-6.

[37] Id. at 4.

[38] Id. at 6-7.

[39] Id.

[40] Id. at 6-7.

## IV.  ISSUES

1.     Whether defendant's motion for leave to file a first amended answer should be granted or denied.

2.     Whether defendant's motion to strike portions of plaintiff's summary judgment evidence or, in the alternative, to reopen plaintiff's deposition should be granted or denied.

3.     Whether there is a genuine issue of material fact to preclude entry of judgment as a matter of law on any of plaintiff's claims against defendant.

4.     Whether defendant's request for oral argument on its summary judgment motion should be granted or denied.

## V.  SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in

Rule 56, Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[41]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[42]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[43]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

---

[41] FED. R. CIV. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

[42] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

[43] Id. at 248, 106 S. Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

9

a verdict for the nonmoving party.[44]   Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[45]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

demonstrate the absence of a genuine issue of material fact.[46]   The burden then shifts to the party

opposing the motion to present affirmative evidence to defeat a properly supported motion for

summary judgment.[47]   All facts and inferences drawn from those facts must be viewed in the

light favorable to the party resisting the motion for summary judgment.[48]   "The court need

---

[44] Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[45] Anderson, 477 U.S. at 249, 106 S. Ct. at 2510.

[46] Rule 56(c)(1) provides:
Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
FED. R. CIV. P. 56(c)(1).  See also Celotex, 477 U.S. at 323, 106 S. Ct. at 2552-53.

[47] Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15.

[48] Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to [the] facts.  As we have emphasized,  "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

consider only the cited materials, but it may consider other materials in the record."[49]   Summary

judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is

no genuine dispute as to any material facts and the moving party is entitled to judgment as a

matter of law.[50]   "A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence."[51]

    If  "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its

initial burden by showing—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case."[52]   The movant "must demonstrate the absence

of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's

---

    metaphysical doubt as to the material facts. . . Where the record taken as a whole
could not lead a rational trier of fact to find for the nonmonving party, there is no
'genuine issue for trial.'"  "The mere existence of *some* alleged factual dispute
between the parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no *genuine* issue of *material*
fact."  "When opposing parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of ruling on a motion for
summary judgment."
550 U.S. at 380, 127 S. Ct. at 1776 (emphasis in original) (quoting FED. R. CIV. P. 56(c);
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356
(1986); Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510).

    [49]  FED. R. CIV. P. 56(c)(3).

    [50]  See Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).

    [51]  FED. R. CIV. P. 56(c)(2).

    [52]  Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325,
106 S. Ct. at 2554) (internal punctuation omitted), cert. denied, __ U.S. __, 131 S. Ct. 355
(2010).

case."[53]  "If the moving party fails to meet its initial burden, the motion for summary judgment

must be denied, regardless of the nonmovant's response.[54]  On the other hand, if the movant

meets its burden and the non-movant cannot provide some evidence to support its claim,

summary judgment is appropriate.[55]

     If the nonmovant cannot adequately defend against a motion for summary judgment, the

remedy is a motion for relief under Rule 56(d), which provides:

> (d)  When Facts Are Unavailable to the Nonmovant.  If a nonmovant
> shows by affidavit or declaration that, for specified reasons, it cannot
> present facts essential to justify its opposition, the court may:
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.[56]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted

because the rule is designed to safeguard non-moving parties from summary judgment motions

that they cannot adequately oppose."[57]  To be entitled to a continuance of a summary judgment

---

    [53] Id.; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

    [54] Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

    [55] Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S. Ct. 111 (2002).

    [56] See FED. R. CIV. P. 56(d).

    [57] Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f)) (internal punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006) (same); Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992).  See also Sapp v. Mem'l Hermann Healthcare Sys., 406 Fed. App'x 866, 869 (5th Cir.

proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable the party to rebut the movant's allegations there are no genuine issue of material fact.[58]

## VI.  DISCUSSION

A.     **Defendant's Motion for Leave to File First Amended Answer**

1.      summary of arguments

Defendant seeks leave to amend its original answer, "specifically to allege the Faragher defense to conform the pleading to Defendant's Motion for Summary Judgment."[59]  Defendant argues there is good cause to amend its answer after the March 13, 2013 deadline to amend pleadings because (1) defendant sought leave to amend the pleading "as soon as it realized amendment was necessary" after plaintiff relied on the pleading defect in its response to defendant's summary judgment motion; (2) the amendment is important because the Faragher affirmative defense "precludes liability based on Defendant's efforts to establish polices and procedures to avoid discrimination, and Plaintiff's unreasonable failure to avail herself of those procedures;" (3) "Plaintiff is not surprised or prejudiced by the assertion of the Faragher defense,

---

2010).

[58]  See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") (citations and internal punctuation omitted).

[59]  Docket no. 22 at 2.  The Faragher defense (also referred to as the "Ellerth/Faragher defense") is an affirmative defense to vicarious liability in hostile environment sexual harassment cases, set forth in the Supreme Court companion cases Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998).

or by Defendant's factual contentions that it had anti-discrimination policies and procedures and that Plaintiff failed to report the alleged harassment" because on September 27, 2012 plaintiff produced in discovery defendant's "EEOC Position Statement" which expressly referenced the Faragher defense; and (4) a continuance is unnecessary because a trial date has not been set and "[a]ny need Plaintiff might have to conduct further discovery regarding the defense can easily be accommodated."[60]

Plaintiff responds with five main arguments.  First, plaintiff argues defendant's counsel's alleged "inadvertence" for not expressly pleading the Faragher defense in the original answer is "'tantamount to no explanation at all.'"[61]  Second, defendant's characterization of the defense, and need to amend its answer, as "important" is belied by assertions in correspondence from defense counsel to plaintiff's counsel and defendant's failure to plead the defense for almost a year.[62]  Third, defendant seeks to "add[] a new previously unidentified defense" which requires additional discovery "on the issue of the factual backup for such a defense and the effectiveness of the procedures put in place by Defendant which would address such a defense;" the deadline for discovery has passed; and "[a]ny modification of the scheduling order . . . would further delay the trial."[63]  Fourth, "Defendant's argument that Plaintiff would not be prejudiced by the new assertion of the Faragher defense borders on ludicrous" because assertion of the defense "would

---

[60]  Docket no. 22 at 2-3.

[61]  Docket no. 28 at 7 (quoting S&W Enters. v. Southtrust Bank of Ala., 315 F.3d 533, 536 (5th Cir. 2003)).

[62]  Id. at 7-8.

[63]  Id. at 9.

require Plaintiff to do more discovery on the efficacy of what <u>Faragher</u> defense [*sic*]."[64]   Fifth,

defendant's EEOC Position Statement does not demonstrate plaintiff would not be surprised by

the assertion of the <u>Faragher</u> defense because the statement was a "pre-litigation EEOC letter

submitted by Defendant to the EEOC on December 27, 2011" and "Plaintiff cannot be required

to read ever piece of prior correspondence to third parties to determine Defendant's intent and

legal theories."[65]   Finally, in her "prayer," plaintiff requests the Court deny the motion and

> order that Defendant [] pay attorney's fees to Plaintiff, and further sanction
> Defendant under Rule 37(b)(2)(ii)-(vii) by ["](ii) prohibiting the disobedient party
> from supporting or opposing designated claims or defenses, or from introducing
> designated matters in evidence["] and/or ["](vii) treating as contempt of court the
> failure to obey any order.["][66]

Defendant's reply advances seven main arguments in support of its motion for leave to

amend.   First, citing case law from the Southern District of Alabama affirmed by the Eleventh

Circuit Court of Appeals, defendant argues its original answer "already properly pleads the

entirety of the [<u>Faragher</u>] defense" because it expressly pleaded the first element of the defense

and its pleading of plaintiff's failure to mitigate her damages satisfies the pleading requirement

for the second element of the defense.[67]   Second, plaintiff does not explain why she would be

prejudiced by the assertion of the defense, and plaintiff "would [not] be *unfairly* surprised or

prejudiced" because she will not be deprived of a "fair opportunity to mount an attack or defense

---

[64]   <u>Id.</u> at 9-10.

[65]   <u>Id.</u> at 10.

[66]   <u>Id.</u> at 11.

[67]   Docket no. 30 at 2-5 (citing and discussing <u>Howard v. City of Robertsdale</u>, No. 03-0770-BH-C, 2004 WL 5551812, at *7 n.4 (S.D. Ala. Dec. 9, 2004), <u>aff'd</u>, 168 Fed. App'x 883 (11th Cir. Feb. 9, 2006)).

to a claim or defense" as (1) the defense was adequately pleaded in the original answer, (2) the

<u>Faragher</u> defense was set forth in defendant's EEOC Position Statement which plaintiff produced

in discovery, and (3) the <u>Faragher</u> defense, "as applied in this case at this time, raises no new

facts" which would require additional discovery, especially when plaintiff admitted certain facts

in her deposition and did not depose any witness from defendant.[68]  Third, a continuance is

unnecessary because even if plaintiff needed additional discovery on the defense it could be

accomplished "within the next month without delaying proceedings."[69]  Fourth, the <u>Faragher</u>

defense is critical to defendant's defense of the Lopez harassment claim because "it absolutely

bars her recovery."[70]  Fifth, defendant's counsel's alleged "inadvertence" for failing to expressly

plead the <u>Faragher</u> defense is a neutral factor in determining whether amendment should be

permitted.[71]  Sixth, plaintiff "misunderstands the procedural setting of this motion" and fails to

demonstrate a basis for sanctions against defendant.[72]  Seventh, plaintiff's use of settlement

correspondence is improper and violates Rule 408 of the Federal Rules of Evidence, and

defendant asks the Court to strike the correspondence from the pleadings and the record.[73]

Finally, defendant asks that its motion be granted, or "denied expressly on grounds of mootness"

if the Court finds the original answer adequately pleads the <u>Faragher</u> defense.

---

[68]  <u>Id.</u> at 5-7 (emphasis in original).

[69]  <u>Id.</u> at 7.

[70]  <u>Id.</u> at 7-8.

[71]  <u>Id.</u> at 8.

[72]  <u>Id.</u> at 9.

[73]  <u>Id.</u> at 9-10.

2.    **analysis**

Rule 16(b)(4) of the Federal Rules of Civil Procedure permits amendment of a trial

court's scheduling order "only for good cause and with the judge's consent."[74]  "The good cause

standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met

despite the diligence of the party needing the extension.'"[75]  In determining good cause for

amending a scheduling order, the Court considers four factors: "(1) the explanation for the failure

to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice

in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[76]

As a preliminary matter, plaintiff has not demonstrated any basis for sanctioning

defendant, including ordering defendant to pay plaintiff any attorney's fees, prohibiting defendant

from supporting or opposing any claims or defenses, or finding defendant in contempt of the

Court.  Accordingly, plaintiff's request for sanctions is **denied**.

In its original answer, filed June 11, 2012, under the caption "Affirmative Pleadings,"

defendant pleaded, among other things:

> 7.    Anti-Discrimination Policy & Procedures
> Plaintiff's punitive damage claim is barred because Defendant had
> anti-discrimination policies and procedures in place and made good faith efforts to
> educate its employees on those policies and procedures.
> * * * *
> 9. Failure to Mitigate
> Upon information and belief, Defendant asserts Plaintiff failed to mitigate

---

[74] FED. R. CIV. P. 16(b)(4).

[75] Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003) (quoting S&W Enters., 315 F.3d at 535).

[76] Id.

her damages.[77]

The parties' deadline to file amended pleadings was March 13, 2013.[78]  On April 30, 2013, defendant moved for entry of judgment as a matter of law on plaintiff's hostile environment sexual harassment claim based in part on the Ellerth/Faragher affirmative defense.[79]  On May 14, 2013, plaintiff responded to the summary judgment motion arguing in part that defendant's failure to plead the Ellerth/Faragher defense precluded defendant from relying on the defense.[80]  On May 17, 2013, defendant moved for leave to amend its original answer to assert the Ellerth/Faragher defense.[81]

The Ellerth/Faragher defense permits employers to avoid vicarious liability in a supervisor hostile environment sexual harassment case if the employer can show (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.[82]  Defendant's original answer pleads the first element of the defense.[83]  With respect to the second element of the defense, the Supreme Court

---

[77]  Docket no. 3 at 4.

[78]  Docket no. 10.

[79]  Docket no. 19 at 16-17.

[80]  Docket no. 20 at 20-23.

[81]  Docket no. 22.

[82]  Wyatt v. Hunt Plywood Co., 297 F.3d 405, 409 (5th Cir. 2002) (citing Casiano v. AT&T Corp., 213 F.3d 278, 283-84 and attached appendix (5th Cir. 2000)), cert. denied, 537 U.S. 1188, 123 S. Ct. 1254 (2003).

[83]  Docket no. 3 at 4.

in Faragher expressly recognized it is a:

> requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm [which] reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty "to use such means as are reasonable under the circumstances to avoid or minimize the damages" that result from violations of the statute.[84]

Furthermore, the Eleventh Circuit has found the defense was not waived when the employer pleaded plaintiff's failure to mitigate damages:

> We agree with the district court that Robertsdale did not waive the Ellerth-Faragher defense by not referring to it by name in its Answer.  Robertsdale raised a general "failure to mitigate damages" defense, which we conclude was sufficient to assert the Ellerth-Faragher defense.  As the Supreme Court has held, "[f]ollowing Ellerth and Faragher, the plaintiff who alleges no tangible employment action has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard."  Pennsylvania State Police v. Suders, 542 U.S. 129, 152, 124 S. Ct. 2342, 2357, 159 L. Ed. 2d 204 (2004).  Thus, the Ellerth-Faragher defense is clearly a mitigation defense, and Howard had ample "notice of the affirmative defense and a chance to rebut it," as required by Fed. R. Civ. Pro. 8(c).  Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989).[85]

The Court finds the Eleventh Circuit's opinion persuasive.  Defendant expressly pleaded the first element of the Ellerth/Faragher defense and the affirmative defense of plaintiff's failure to mitigate her damages.  Plaintiff has not been surprised by the defense; "defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"[86]  Accordingly, the Court concludes defendant's original answer adequately pleads the

---

[84] 524 U.S. at 806, 118 S. Ct. at 2292 (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 231 n.15, 102 S. Ct. 3057, 3065 n.15 (1982)).

[85] Howard,168 Fed. App'x at 886 n.3.

[86] Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 577 (5th Cir. 2009) (quoting Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983)) (pleading that defendant was "immune" from liability found to adequately plead qualified immunity affirmative defense).

Ellerth/Faragher affirmative defense.

In addition, defendant has shown good cause for leave to amend its answer. Defendant explains its failure to expressly plead the defense in its original answer as one of mistake, and possibly "attorney error," because it "intended to plead the elements" of the defense and filed its motion for leave "as soon as it realized amendment was necessary."[87] The defense is clearly important to defendant, allowing an employer to avoid vicarious liability in supervisor hostile environment sexual harassment cases, as alleged in this case.

The potential prejudice to plaintiff also is low. As stated, defendant expressly pleaded the first element of the defense in its answer as well as plaintiff's failure to mitigate her damages. In addition, defendant expressly stated its reliance on the Ellerth/Faragher defense in its pre-litigation EEOC position statement, and plaintiff does not dispute that *she produced* a copy of the statement in discovery in this litigation. Thus, it is not unreasonable to conclude plaintiff should have been on notice of defendant's intended reliance on the defense since September 2012, well before the deadline to amend pleadings.

Finally, trial of this case has not been set. Plaintiff indicates the assertion of the Ellerth/Faragher defense means additional discovery is needed "on the issue of the factual backup for [the] defense and the effectiveness of the procedures put in place by Defendant." But, plaintiff does not explain what discovery she would require in light of plaintiff's deposition testimony on the topic. For all these reasons, the Court concludes defendant has shown good cause for leave to amend its original answer, and **grants** defendant's amended motion for leave to file a first amended answer.

---

[87] Docket nos. 22 at 2, and 30 at 8.

**B.**      **Defendant's Motion to Strike Portions of Plaintiff's Summary Judgment Evidence or, in the Alternative, to Reopen Plaintiff's Deposition**

Defendant moves to strike the changes plaintiff has made to her deposition testimony through an errata sheet or, in the alternative, to reopen plaintiff's deposition at plaintiff's expense, arguing, in sum, plaintiff has made untimely, material changes to her deposition testimony through an errata sheet, without providing any reason for the changes, and the changes are in effect a "sham affidavit."[88]  Plaintiff responds, in sum, that her errata changes are timely, defendant filed its motion for summary judgment relying on plaintiff's deposition testimony before the deadline for plaintiff to review and submit any changes to her deposition testimony, and plaintiff's changes to her deposition testimony were occasioned by the intimidation and embarrassment she was subjected to by defendant's questioning and the presence at the deposition of an alleged perpetrator of the harassment (Lopez) as defendant's corporate representative.[89]  In reply, defendant contends plaintiff's failure to provide reasons for the changes in the errata sheet is fatal to the errata remaining in the record, plaintiff's counsel never objected to defendant's questioning of plaintiff which could not have intimidated plaintiff into providing incomplete or false testimony because all but one line of questioning occurred after the testimony to which plaintiff's errata relates, and Lopez attending the deposition as defendant's corporate representative was appropriate and permissible.[90]  There is extensive, vigorous briefing on defendant's motion.

---

[88]  Docket no. 27.

[89]  Docket no. 29.

[90]  Docket no. 31.

Plaintiff arguably has made material changes to her deposition testimony through her errata sheet, which are significant and noteworthy.  But, because the rulings in this memorandum opinion and order are adverse to plaintiff, the Court has fully considered the changes plaintiff has made to her deposition testimony through the errata sheet.  The Court will not, at this time, strike the errata sheet from the summary judgment record.

**C.      Defendant's Motion for Summary Judgment**

      **1.      sex discrimination**

            **a.      summary of arguments**

                  **i.      defendant's motion**

Defendant moves for summary judgment on plaintiff's claims of sexual harassment perpetuated by Johnson and Lopez.[91]  With respect to Johnson, defendant argues plaintiff has no evidence Johnson "engaged in conduct so severe or pervasive as to create an abusive work environment and affect a term, condition, or privilege of plaintiff's employment."[92]  Defendant contends plaintiff's deposition testimony demonstrates:

- plaintiff complains of Johnson's conduct which took place on June 15, 2010 and July 12, 2010, and which she captured on "garbled and unclear audio recordings;"[93]

---

[91]  Plaintiff's original complaint complains of "sexual harassment by the upper management" but does not identify the alleged perpetrators of the harassment.  <u>See</u> docket no. 1.  Defendant's agreed motion to modify scheduling order deadlines identified Johnson as "the alleged harasser."  Docket no. 13 at 2.  Defendant moves for summary judgment on plaintiff's sexual harassment claims based on the conduct of two individuals: Johnson and Lopez.  Docket no. 19 at 2-8, 9-17.  Plaintiff's response does not identify conduct of any other individual as forming the basis of plaintiff's harassment claims.  <u>See</u> docket no. 20.

[92]  Docket no. 19 at 8, 12-13.

[93]  <u>Id.</u> at 3.

- "Johnson wanted [plaintif] to be his wife or girlfriend, but she didn't care for him that way;"[94]

- "Johnson attempted to take photographs of [plaintiff] while working, but while fully clothed," and "Johnson showed her the pictures, and despite the fact that they were 'decent,' she made him delete them;"[95]

- "Johnson tried to order [plaintiff] to bend forward so that he could take a picture of her breast," but plaintiff did not comply;[96] and

- "[o]nce, at the end of a long day, Johnson laid his head against [plaintiff's] chest, and she pushed him away."[97]

Otherwise, defendant highlights that when plaintiff rejected "Johnson's playful bantering," "she was always in control;"[98] plaintiff "often joked around with Johnson;"[99] on the audio recording, plaintiff was laughing, "explaining that, 'I had to act happy because then he wouldn't speak to me for days if—after I would always put him in his place then he wouldn't speak to me for a couple of days;"[100] plaintiff conceded "the alleged harassment never interfered with her job duties or her ability to get the job done;"[101] Johnson complimented plaintiff on her work and "always supported her, telling her she was a good salesperson;" plaintiff appreciated many of the

---

[94] Id.

[95] Id.

[96] Id. at 13.

[97] Id.

[98] Id. at 3.

[99] Id.

[100] Id.

[101] Id. at 3-4 (emphasis omitted).

23

compliments Johnson gave her; plaintiff complimented Johnson at times;[102] and Johnson and plaintiff ate lunch together, and plaintiff bought Johnson a gift for Boss' Day.[103]  Defendant relies on the Fifth Circuit's decisions in Stewart v. Mississippi Transportation Commission[104] and Hockman v. Westward Communications, LLC[105] and the district court decisions in Smith v. Alderman-Cave Feeds, L.P.[106] and Bishop v. Interim Industrial Services[107] in arguing Johnson's conduct does not rise to the level of severity recognized by the Fifth Circuit as actionable Title VII conduct, nor were the few instances of allegedly inappropriate conduct "frequent enough to be considered pervasive."[108]

Defendant also argues it is not vicariously liable for Johnson's conduct because it "took prompt corrective action, and Johnson did not take any tangible employment action against Plaintiff."[109]  Defendant relies on the Fifth Circuit decisions in Indest v. Freeman Decorating

---

[102]  Id. at 4.

[103]  Id.

[104]  586 F.3d 321, 330 (5th Cir. 2009).

[105]  407 F.3d 317, 326 (5th Cir. 2004).

[106]  No. 1:01-CV-125-C, 2002 U.S. Dist. LEXIS 8031 (N.D. Tex. May 3, 2002).

[107]  No. 3:97-CV-2240-T, 1998 U.S. Dist. LEXIS 17307 (N.D. Tex. Aug. 28, 1998).

[108]  Docket no. 19 at 10-13.

[109]  Id. at 13, 14-15.

Inc.,[110] <u>Carmon v. Lubrizol Corp.</u>,[111] and <u>Dornhecker v. Malibu Grand Prix Corp.</u>[112] and contends "[t]he evidence conclusively shows" defendant began its investigation of Johnson's conduct the day after hearing of the problem and took corrective action against Johnson within eleven days, and plaintiff "was happy with how it was handled."[113]

With respect to Lopez, defendant argues plaintiff "abandon[ed]" her claims against him at her deposition," but in any event also has no evidence his conduct was severe or pervasive.[114] Defendant contends plaintiff's deposition testimony demonstrates:

> Her only complaints about Lopez had nothing to do with alleged harassment and were two-fold: (1) issues relating to financial commissions, and (2) she "just didn't feel comfortable" working with him because he spoke to people about her problem with Michael Johnson.[115]

Defendant further argues that even if plaintiff's amendments to her deposition testimony made through the errata sheet are considered, "the allegations are insufficiently severe or pervasive to alter the conditions of Plaintiff's employment" and cannot support a sexual harassment claim.[116]

In addition, with respect to Lopez, defendant argues it has established the <u>Faragher</u> affirmative defense to vicarious liability.[117]  Defendant asserts it exercised reasonable care to

---

[110]  164 F.3d 258, 266 (5th Cir. 1999).

[111]  17 F.3d 791, 793 (5th Cir. 1994).

[112]  828 F.2d 307, 310 (5th Cir. 1987).

[113]  Docket no. 19 at 14-15 (emphasis omitted).

[114]  <u>Id.</u> at 15.

[115]  <u>Id.</u> at 5-6.

[116]  <u>Id.</u>

[117]  <u>Id.</u> at 16-17.

prevent and correct harassment by creating its policy against sexual harassment contained in its employee handbook, and regularly conducting training which plaintiff attended;[118] and plaintiff "completely failed to avail herself of [defendant's] procedures for reporting and correcting harassment."[119]  Defendant submits as summary judgment evidence excerpts of plaintiff's deposition testimony, plaintiff's responses to defendant's interrogatories, Brooks' affidavit testimony, the performance correction notice given to Johnson, the affidavit testimony of Jean Gonzales ("Gonzales") of defendant's human resources department, plaintiff's short-term and long-term disability notices, defendant's employee handbook, and certificates indicating plaintiff's completion of sexual harassment training.[120]

### ii.    plaintiff's response

In her response, plaintiff characterizes her sexual harassment claim as one of hostile work environment.[121]  With respect to Johnson, plaintiff does not respond to defendant's analysis of case law, but argues "Johnson's litany of sexual conduct toward Plaintiff is sufficient to create an issue of material fact that should go before a jury."[122]  Plaintiff contends that almost immediately following plaintiff's 90-day hiring probationary period, around September 2009, Johnson "began

---

[118]  Id.

[119]  Id. at 17.

[120]  Docket no. 19, attached app.

[121]  E.g., docket no. 20 at 12, 18.  Citations to plaintiff's response are to the electronic CM/ECF pagination.

[122]  Id. at 12-13.

26

a period of sexual harassment."[123]  Plaintiff asserts, without citation to the summary judgment record, that Johnson:

- "repeatedly [made] sexual advances" to plaintiff;

- took "inappropriate pictures of her breasts, telling her that that was what a camera was for;"

- asked her about "fornication" with him;

- told her that "when she had her leg extended [] he wanted to put his hands into her pants and that he wanted to see something;" and

- repeatedly told her to "come here; let me touch you" and asked her to stand up so he could look at her; and grabbed her pants "to the point she had to tell him to 'leave my pants alone, they're falling.'"[124]

Plaintiff further contends plaintiff's deposition testimony indicates:

- Johnson "told [plaintiff] he was a single man, although he was married, and that he 'was not gay, what [did] she expect;"

- Plaintiff "had to push [Johnson] away when he was trying to turn her around [] so he could feel what type of underwear she was wearing;" and

- Johnson "pulled at [plaintiff's] blouse because he wanted to take pictures of her she considered revealing."[125]

Plaintiff also contends Lopez "sexually harass[ed]" plaintiff and "[h]is conduct included

attempting to kiss her, hugging her, and telling her that she was like no woman he had met before

---

[123]  Id. at 7.

[124]  Id. at 7, 10.  See id. at 12-13 ("Considering the outrageousness of the conduct—the pulling of Plaintiff's shirt, the improper photography, the grabbing, the fornication comments, and all the other sexually charged behavior Johnson exhibited toward Plaintiff without respect or borders creates such an issue of material fact.").

[125]  Id. at 7.

and needed love and affection."[126]  Plaintiff further argues "Johnson and Lopez's conduct . . . along with Brook's response and acquiescence in such conduct" create a fact issue concerning "whether such conduct rises to the level of hostile work environment sexual harassment."[127]

Plaintiff also argues there is a genuine issue of material fact as to whether defendant is vicariously liable for Johnson's conduct, and defendant's responses to plaintiff's complaints were inadequate.  Plaintiff argues "numerous property managers were aware of Plaintiff's complaints over the course of her employment," as verified by employee statements acknowledging plaintiff's complaints.[128]  Plaintiff contends "[e]ach individual was and had direct links to upper management" and "[t]hey were, in fact, supervisors of each of their own offices."[129]  Plaintiff further argues the property managers were "'sufficiently high level in the company's management hierarchy to qualify as prox[ies] for the company,'" illustrated by Lopez, a property manager, appearing at plaintiff's deposition as defendant's corporate representative.[130]  Plaintiff also argues defendant's employee handbook imposed on each employee a duty to report harassment to management, but the property managers discouraged plaintiff from reporting the alleged harassment and did not report it themselves.[131]  Thus, the property managers' failure to follow company policy "is evidence tending to show that a reasonable jury could find that they

---

[126]  Id. at 9.

[127]  Id. at 21-22.

[128]  Id. at 14-15.

[129]  Id. at 15.

[130]  Id.

[131]  Id. at 16.

company's response to Plaintiff's complaints was inadequate."[132]  Plaintiff also argues there is a

fact issue as to "whether the Company failed to take sufficient disciplinary and remedial action in

response to Plaintiff's complaints" because defendant "did not seriously investigate Plaintiff's

complaints," neither Johnson nor Lopez were "strongly reprimand[ed]," and plaintiff was moved

to a new location so "[s]he was the victim, but she was the one who had to undergo a change."[133]

Plaintiff further complains about defendant's investigation of the complaints: Brooks "only heard

two tapes of recordings of Johnson's sexual harassment" and refused to hear more; and Brooks'

"response to Plaintiff's situation as a victim failed miserably" because he stated, "Well, I always

say nice things to my co-workers," which indicated Johnson and Lopez's behavior "was

commonplace and acceptable."[134]

       Plaintiff also argues the conduct of Johnson and Lopez was severe and pervasive under

the "continuing violation doctrine."  More specifically, plaintiff argues Brooks' response to the

complaints of alleged harassment and Lopez's conduct "expressed a continuation of the

workplace sexual harassment" perpetrated by Johnson, and the ongoing conduct demonstrates a

pervasive hostile environment that was based on more than a single harassing incident.[135]

Plaintiff also argues she suffered emotional distress as a result of the conduct which "lends

credence to her claim that the harassment by her supervisors rose to a level that met or exceeded

---

[132] Id. at 17.

[133] Id. at 17-18.

[134] Id. at 10, 17-18.

[135] Id. at 18-19.

conduct which is humiliating."[136]

Finally, plaintiff argues defendant is precluded from relying on the Ellerth/Faragher defense to avoid liability for its employees' conduct because defendant did not plead the defense in its answer.[137]  Plaintiff submits as summary judgment evidence: excerpts of plaintiff's deposition testimony with the errata sheet, and defendant's initial disclosures with attachments.[138]

### iii.    defendant's reply

Defendant's reply objects to plaintiff's summary judgment evidence, and makes six main arguments in opposition to plaintiff's response.[139]  With respect to plaintiff's summary judgment evidence, defendant argues: plaintiff's recitation of undisputed material facts is "unsubstantiated assertions" without record citation;[140] the errata sheet attached to plaintiff's deposition testimony constitutes a "sham affidavit" that improperly attempts to change plaintiff's testimony and is untimely under the Federal Rules;[141] neither the alleged "secret recording of a conversation with Defendant supporting [plaintiff's] claims" nor a transcript of the recording is in the summary judgment record, nor are any physician notes;[142] plaintiff misstates the evidence in the record;[143]

---

[136]   Id. at 19.

[137]   Id. at 20-23.

[138]   Docket no. 20, attached appendix ("app.").

[139]   Docket no. 23.

[140]   Id. at 1-2.

[141]   Id. at 2-3.

[142]   Id. at 3.

[143]   Id. at 3-4.

and plaintiff impermissibly relies on "hearsay and other objectionable evidence" in response to the summary judgment motion.[144]

Substantively, defendant advances six arguments that "there is no evidence of severe or pervasive conduct and plaintiff cannot negate defendant's defenses:" (1) plaintiff's allegation of a "litany" of objectionable conduct by Johnson is unsupported by admissible evidence;[145] (2) there is "no fact issue" on whether defendant "took prompt corrective action against Johnson once it learned of the allegations" of misconduct;[146] (3) "plaintiff has no evidence Lopez was a 'proxy' for defendant" such that liability is imputed to defendant for his actions;[147] (4) the continuing violation doctrine does not apply because it is a method of avoiding the deadline for filing a pre-suit charge of discrimination with the EEOC, not for avoiding the duty to produce admissible evidence to survive summary judgment;[148] (5) defendant should not be deemed to have waived the Ellerth/Faragher defense because plaintiff cannot be surprised by defendant's assertion of the defense that was alleged in defendant's EEOC position statement in September 2012, and plaintiff is not prejudiced by defendant raising the defense well before trial;[149] and (6) "plaintiff's allegation that she was afraid to report harassment cannot supplant defendant's evidence that it

---

[144] Id. at 4.

[145] Id.

[146] Id. at 4-6.

[147] Id. at 6-7.

[148] Id. at 7.

[149] Id. at 7-8.

exercised reasonable care to prevent and correct harassment."[150]  In closing, defendant asserts "Plaintiff's summary judgment 'evidence' should be stricken," and asks that its summary judgment motion be granted.[151]

       **b.**    **standards**

    Title VII makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.[152]

A plaintiff may establish employment discrimination by direct or circumstantial evidence.[153]  If the plaintiff produces only circumstantial evidence, the Court must analyze the discrimination claims under the well-established burden-shifting framework set forth in McDonnell Douglas

---

[150] Id. at 8-10.

[151] Id. at 10.  Plaintiff's summary judgment evidence consists of excerpts of her deposition testimony along with her errata changes, and defendant's initial disclosures with attachments.  Docket no. 20, app.  To the extent defendant's request to strike "Plaintiff's summary judgment 'evidence'" refers to plaintiff's errata changes to her deposition testimony, the issue is addressed in connection with defendant's motion to strike portions of plaintiff's summary judgment evidence.  See supra Part VI.B.  To the extent the request refers to employee statements attached to defendant's initial disclosures, see docket no. 23 at 5-6, because the rulings in this memorandum opinion and order are adverse to plaintiff, the Court has fully considered the statements.

[152] 42 U.S.C. § 2000e-2(a).

[153] Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002), cert. denied, 539 U.S. 926, 123 S. Ct. 2572 (2003).

Corp. v. Green.[154]  Under the <u>McDonnell Douglas</u> framework, a plaintiff must first carry the

initial burden of proving by the preponderance of the evidence a *prima facie* case of

discrimination.[155]  In <u>McDonnell Douglas,</u> the Supreme Court required a

> complainant in a Title VII trial [to] carry the initial burden under the statute of
> establishing a *prima facie* case of racial discrimination.  This may be done by
> showing (i) that he belongs to a racial minority; (ii) that he applied and was
> qualified for a job for which the employer was seeking applicants; (iii) that,
> despite his qualifications, he was rejected; and (iv) that, after his rejection, the
> position remained open and the employer continued to seek applicants from
> persons of complainant's qualifications.[156]

But, the Supreme Court noted this framework is intended to be flexible and, therefore, the

requirements for a *prima facie* case will vary with the facts of each case.[157]  At the least, a *prima*

*facie* case in an employment discrimination cause of action requires proof of some type of

ultimate employment decision adverse to the plaintiff.[158]

---

[154]  411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  See <u>Reeves v. Sanderson Plumbing</u>
<u>Prods., Inc.</u>, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000) ("<u>McDonnell Douglas</u> and
subsequent decisions have 'established an allocation of the burden of production and an order for
the presentation of proof in . . . discriminatory-treatment cases.'") (quoting <u>St. Mary's Honor</u>
<u>Center v. Hicks</u>, 509 U.S. 502, 506, 113 S. Ct. 2742 (1993)).

[155]  <u>Patterson v. McClean Credit Union</u>, 491 U.S. 164, 186-87, 109 S. Ct. 2363, 2378
(1989); <u>Tex. Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093-94
(1981).

[156]  <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824.

[157]  <u>Id.</u> at 803 n.13, 93 S. Ct. at 1824 n.13 ("The facts necessarily will vary in Title VII
cases, and the specification above of the *prima facie* proof required from respondent is not
necessarily applicable in every respect to differing factual situations.").

[158]  <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 560 (5th Cir. 2007) (explaining that after
<u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 (2006),
"our precedent recognizing only 'ultimate employment decisions' as actionable adverse
employment actions remains controlling for Title VII *discrimination* claims" as opposed to
retaliation claims) (emphasis in original).

If the plaintiff establishes a *prima facie* case, a rebuttable presumption arises that the

employer unlawfully discriminated against plaintiff.[159]  The burden then shifts to the defendant to

present evidence that it treated plaintiff in a certain way for a legitimate, nondiscriminatory

reason.[160]  Once the defendant satisfies this second part of the analysis, the presumption raised by

the *prima facie* case is rebutted and is dropped from the case.[161]  The third step of the analysis

shifts the burden back to plaintiff to prove the reason articulated by the employer was a mere

_____

[159]  Patterson, 491 U.S. at 187, 109 S. Ct. at 2378; Burdine, 450 U.S. at 253, 101 S. Ct. at
1093.

[160]  St. Mary's Honor Center, 509 U.S. at 507, 113 S. Ct. at 2747.  See Burdine, 450 U.S.
at 255-56, 101 S.Ct. at 1094-95.  In Burdine, the Court stated:
> To accomplish this, the defendant must clearly set forth, through the introduction
> of admissible evidence, the reasons for the plaintiff's rejection.  The explanation
> provided must be legally sufficient to justify a judgment for the defendant.  If the
> defendant carries this burden of production, the presumption raised by the *prima
> facie* case is rebutted, and the factual inquiry proceeds to a new level of
> specificity.  Placing this burden of production on the defendant thus serves
> simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate
> reason for the action and to frame the factual issue with sufficient clarity so that
> the plaintiff will have a full and fair opportunity to demonstrate pretext.  At this
> second stage, defendant is not required to prove the legitimate, nondiscriminatory
> reason.

Id. at 255-56, 101 S.Ct. at 1094-95 (citations and notes omitted).  In Bodenheimer v. PPG Indus.,
Inc., 5 F.3d 955, 958 (5th Cir. 1993), the Court stated:
> This misstatement [by a defense witness], Bodenheimer argues, renders the
> evidence unreliable, thereby creating a genuine factual issue.  Bodenheimer's
> reasoning is unpersuasive.  The degree of impeachability of evidence at this stage
> is irrelevant.  St. Mary's [Honor Center] directs us to avoid making any credibility
> determinations at this stage because "the burden-of-production determination
> necessarily *precedes* the credibility-assessment stage."  St. Mary's [Honor Center,
> 509 U.S. at 509], 113 S. Ct. at 2748 (emphasis original).  The employer need only
> articulate a lawful reason, regardless of what its persuasiveness may or may not
> be.

[161]  St. Mary's Honor Center, 509 U.S. at 507, 516-17, 113 S. Ct. at 2747, 2752-53.

pretext for discrimination.[162]  For purposes of proving pretext, it is not enough to show the stated reason was false; plaintiff must show both the stated reason was false and discrimination was the actual reason for the adverse employment action.[163]  "[T]he trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"[164]

At the third step, plaintiff need not produce additional independent evidence of discrimination.[165]  Although "a *prima facie* case and sufficient evidence to reject the employer's explanation may permit a trier of fact to determine that the employer unlawfully discriminated and may therefore prevent summary judgment in favor of the employer," this showing is not always enough to prevent summary judgment if "no rational factfinder could conclude the action was discriminatory."[166]

---

[162] Id.; Burdine, 450 U.S. at 256, 101 S. Ct. at 1095.

[163] St. Mary's Honor Center, 509 U.S. at 516-17, 113 S. Ct. at 2752-53.

[164] Reeves, 530 U.S. at 142-44, 120 S. Ct. at 2106 (quoting Burdine, 450 U.S. at 255, 101 S. Ct. at 1089 & n.10).  In Reeves, the Supreme Court held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  530 U.S. at 148-49, 120 S. Ct. at 2109.  The Court stated that, more likely than not, a showing of pretext will lead to an inference of discrimination: "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."  Id. at 148-49, 120 S. Ct. at 2108-09.

[165] See Blow v. City of San Antonio, 236 F.3d 293, 298 (5th Cir. 2001) (reiterating that no "additional, independent evidence of discrimination" is required); Ratliff v. City of Gainesville, 256 F.3d 355, 361-62 (5th Cir. 2001) (same).

[166] Reeves, 530 U.S. at 148, 120 S. Ct. at 2109; Pratt v. City of Houston, Tex., 247 F.3d 601, 606 (5th Cir. 2001).  Although Reeves was based on a motion for judgment as a matter of law, the standard is the same for summary judgment.  Pratt, 247 F.3d at 607 n.3.

For instance, an employer would be entitled to summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." [Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.]  Whether summary judgment is appropriate in any particular case depends on a variety of factors, including "the strength of the *prima facie* case, the probative value of the proof that the employer's explanation is false and any other evidence that supports the employer's case and that properly may be considered." Id.  We have said that summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 373 (5th Cir. 2000), cert. denied, [531 U.S. 1150, 121 S. Ct. 1092, 148 L. Ed. 2d 966] (2001).[167]

Because plaintiff ultimately retains the burden of persuading the factfinder of intentional discrimination,[168] the question on summary judgment at the pretext stage is whether there is a conflict in substantial evidence to create a jury question regarding discrimination.

### c.    analysis

#### i.    introduction

Plaintiff provides no particularized statement of facts to support her claims, pleading generally that she was "subject to sexual harassment by the upper management;" and after plaintiff was transferred, the "sexual harassment continued, with the management making demands to see her underwear, and to kissing her frontally."[169]  Plaintiff further pleads that "[d]ue

---

[167] Pratt, 247 F.3d at 606 (note omitted) (second alteration in original) (italics added). See also Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir. 1996) (en banc); Grimes v. Tex. Dept. of Mental Health & Mental Retardation, 102 F.3d 137, 140-41 (5th Cir. 1996).

[168] Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109.

[169] Docket no. 1 at 2.

to her complaints to management of sexual harassment, she was terminated."[170]  Under the heading "sexual harassment," plaintiff pleads defendant "intentionally discriminated" against her in violation of 42 U.S.C. § 2000e-2(a) and recites portions of the statutory prohibitions.[171]  Under the heading "constructive discharge," plaintiff pleads defendant "made the working conditions so intolerable that Plaintiff felt compelled to resign her position."[172]

Two types of gender-based discrimination claims are cognizable under Title VII: hostile environment claims in which "the harassment creates a hostile or abusive working environment, but is not necessarily linked directly to an economic *quid pro quo*," and *quid pro quo* claims in which "the grant or denial of employment advancement, such as a promotion or raise, depends upon whether an employee acquiesces to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature."[173]  The Court will consider both types of claims to the extent plaintiff has pleaded them and defendant has moved for entry of judgment as a matter of law on them.[174]

---

[170]  Id. at 3.

[171]  Id.

[172]  Id.

[173]  Donaldson v. CDB, Inc., 335 Fed. A'ppx 494, 500 (5th Cir. Jul. 9, 2009) (discussing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66, 106 S. Ct. 2399, 2404-05 (1986)).  See FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006), instruction nos. 11.4.1 ("Title VII, sex discrimination, supervisor sexual harassment without tangible employment action (hostile work environment)"), 11.4.2 ("Title VII, sex discrimination, supervisor sexual harassment resulting in tangible employment action (*quid pro quo*)"), 11.4.3 ("Title VII, sex discrimination, co-worker/direct and non-direct supervisory/third-party sexual harassment (hostile work environment)").

[174]  Defendant's motion clearly seeks entry of judgment as a matter of law on plaintiff's pleading that indicates a hostile environment sexual harassment claim.  Docket no. 19 at 1, 8-17. Defendant's motion also appears to move for entry of judgment as a matter of law on plaintiff's

### ii.        hostile work environment claim

To establish a claim of hostile work environment based on sexual harassment by a co-worker, plaintiff must prove she: (1) is a member of a protected class, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on her sex, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) defendant knew or should have known of the harassment in question and failed to take prompt remedial action.[175]   A claim based on harassment by a supervisor does not require proof of the fifth element.[176]

### A.        harassment that affects a term, condition, or privilege of employment

The parties dispute whether plaintiff can meet her *prima facie* burden on the fourth element.   For sexual harassment to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, "'it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"[177]   "To survive summary judgment, the harassment must be 'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work

---

claim for relief on "constructive discharge" grounds, id. at 1 n.1, which can implicate a *quid pro quo* sexual harassment claim, see infra Part VI.C.1.c.iii.

[175]   Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005); Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

[176]   Stewart, 586 F.3d at 330.

[177]   Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005) (quoting Meritor Sav. Bank, 477 U.S. at 67, 106 S. Ct. 2399).

place.'"[178]  The courts look to the totality of the circumstances to determine whether conduct is

severe or pervasive; relevant factors include "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."[179]  In addition, the

conduct must be both objectively and subjectively abusive.[180]  "The Supreme Court has

repeatedly stated that 'simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment.'"[181]  Whether the severity or pervasiveness of conduct rises to an actionable level

under Title VII can be determined as a matter of law.[182]

 The summary judgment record reflects the following:

- plaintiff complains of Johnson's conduct; plaintiff captured two incidents on audio recordings on her mobile phone that occurred on June 15, 2010 and July 12, 2010; neither the recordings nor a transcript of the recordings are part of the summary judgment record;[183]

---

[178]  Hockman, 407 F.3d at 326 (quoting Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).

[179]  Stewart, 586 F.3d at 330 (citing Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 163 (5th Cir. 2007) and quoting Harvill, 433 F.3d at 434 (internal quotations and citations omitted)).

[180]  Harris v. Forklift Sys., 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-71 (1993); Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998).

[181]  Hockman, 407 F.3d at 328 (quoting Faragher, 524 U.S. at 788, 118 S. Ct. 2275 (other quotations and citations omitted)).

[182]  See, e.g., Stewart, 586 F.3d at 330-31 (affirming grant of summary judgment on plaintiff's claim of hostile environment sexual harassment as a matter of law on severity and pervasiveness of conduct); Hockman, 407 F.3d at 326-29 (same).

[183]  Docket no. 19, app. at APX0016-0023 (pl.'s depo. at 216-251 (discussion of audio recordings)), APX0035 (pl.'s depo. at 363 (plaintiff indicated in EEOC complaint that she

- Johnson told plaintiff he wanted her to be his girlfriend or wife, he was attracted to her, and explained he "was not gay" and "what do you expect?"[184]

- Johnson "would joke around with [plaintiff] in ways that [she] felt [were] inappropriate;"[185] the joking "was more than . . . inappropriate . . . . [Johnson] created a situation and an environment that made [plaintiff] feel uneasy, and scared about his intentions. [Johnson] was obsessed with [plaintiff's] body and . . . breasts;"[186]

- Johnson used his mobile phone camera to take photographs of plaintiff while she was working, in which plaintiff was fully clothed and dressed appropriately; Johnson showed plaintiff at least one such photograph and Johnson deleted the photograph at plaintiff's request;[187]

- Johnson attempted to order plaintiff to bend over and wanted plaintiff to pull on her own blouse so he could take pictures of her breasts; plaintiff did not comply;[188]

- Johnson tried to pull plaintiff's arm to turn her around "so he could feel what type of underwear [plaintiff] was actually wearing;"[189] and

- once, at the end of a work event, Johnson laid his head face-down into plaintiff's chest, and plaintiff pushed him away.[190]

---

believed harassment started in "September 2010" (based on plaintiff's testimony, the year likely should be 2009))).

[184]   Id., app. at APX0021 (pl.'s depo. at 245).

[185]   Id., app. at APX0010 (pl.'s depo. at 161).

[186]   Docket no. 20, app. at pl.'s depo. at 161 as amended by errata sheet.

[187]   Docket no. 19, app. at APX0019-21 (pl.'s depo. at 233-37, 242-43); docket no. 20, app. at pl.'s depo. at 241.

[188]   Docket no. 19, app. at APX0019, APX0021, APX0023 (pl.'s depo. at 231-232, 242, 250-51); docket no. 20, app. at pl.'s depo. at 241.

[189]   Docket no. 20, app. at pl.'s depo. at 205.

[190]   Docket no. 19, app. at APX0035 (pl.'s depo. at 363-64).

With respect to Lopez,

- plaintiff had a complaint about Lopez related to the way in which commissions were handled;[191]

- plaintiff "didn't feel comfortable working with [Lopez]" because plaintiff learned Lopez "had spoken to people about . . . [her] situation that . . . [she] was going through [related to Johnson] . . . and [that] nothing was being done," and Lopez had told plaintiff once that he had spoken with Johnson "about what . . . was going on with [plaintiff]" and Johnson "had said that . . . he wouldn't do something like that;" and

- "Lopez said repeatedly that he needed hugs and made inappropriate sexual comments that made me feel uncomfortable. . . . When [plaintiff] was sent to his office before he was transferred to have a document notarized, he asked [plaintiff] to hold him and touch him in his private parts.  That he had been married for twenty years, and was in a loveless marriage and tried to kiss [plaintiff]."[192]

Plaintiff's complaints about Lopez concerning commissions and Lopez relating to her that he spoke to Johnson are not actionable Title VII conduct.  Without further specification, plaintiff's conclusory complaints that Johnson would "joke" with her in ways *she felt* were "inappropriate;" unspecified jokes "made [her] feel uneasy, and scared about [Johnson's] intentions;" Johnson "was obsessed with [her] body and . . . breasts;" and Lopez made "inappropriate sexual comments," do not demonstrate an objectively reasonable person would find the complained of conduct abusive.  Plaintiff cannot meet her burden with conclusory assertions of harassing conduct.[193]

---

[191]  Id., app. at APX0008 (pl.'s depo. at 147-49).

[192]  Id., app. at APX0007 (pl.'s depo. at 135); docket no. 20, app. at pl.'s depo. at 135 as amended by errata sheet.

[193]  Bryan v. Chertoff, 217 Fed. App'x 289, 294 (5th Cir. Jan. 29, 2007) ("cursory assertions" that harassing actions resulted in hostile environment insufficient to meet *prima facie* burden and defeat summary judgment).

Johnson's photographing of plaintiff while working and dressed appropriately, while possibly annoying to plaintiff, is not of the type of severe and extreme behavior to support a hostile environment claim.  Plaintiff may have perceived her work environment to be abusive as a result of Johnson's photography, but plaintiff has failed to show that an objectively reasonable person would feel the same way.[194]

Plaintiff also complains of comments made to her by Johnson concerning her marital status, how Johnson was attracted to her, and that he "was not gay."  The comments may have been "boorish and offensive," but they are not the type that support a hostile environment claim, nor has plaintiff shown they were pervasive.[195]  With respect to plaintiff's complaint about the one incident in Lopez's office in which he "asked [plaintiff] to hold him and touch him in his private parts," stated he had been in a "loveless marriage" for twenty years, and tried to kiss plaintiff, plaintiff does not indicate her response to Lopez's alleged conduct, or Lopez's reaction to any response by her, including whether Lopez ever approached plaintiff again.  One incident is not pervasive, and without more, plaintiff has not demonstrated Lopez's conduct was the type of severe single incident to affect a term, condition or privilege of plaintiff's employment.[196]

---

[194]  See Bishop, 1998 U.S. Dist. LEXIS 17307, at *8-*9 (conduct not severe and pervasive when supervisor asked plaintiff for a date on one occasion, followed her around the workplace to determine her destination, commented on her clothing and asked why she did not wear something more flirtatious, asked her once if she had a boyfriend, and watched her work while he was in his office with the lights off).

[195]  See Buenrostro v. Flight Safety Int'l, Inc., 62 Fed. App'x 556, 556 (5th Cir. 2003) (per curiam) (evidence of being hired based on appearance, invited to lunch, complimented on appearance, disfavored in comparison to another woman, and enduring a change in attitude after she refused her supervisor's advances not actionable under Title VII).

[196]  See Paul v. Northrop Grumman Ship Sys., 309 Fed. App'x 825, 829 (5th Cir. Feb. 5, 2009) (per curiam) ("[W]hile an isolated incident—reflecting conduct that is not pervasive or

Plaintiff's complaints about Johnson and Lopez largely relate to "offensive utterances" but, plaintiff also complains of two incidents of physical touching, one of which concerned Johnson's head on plaintiff's chest.  Courts consider whether conduct "is physically threatening or humiliating, or a mere offensive utterance" in assessing whether conduct is severe or pervasive.  But, upon a review of the entire record, the Court cannot conclude these two incidents of touching are of the severe and extreme conduct the Fifth Circuit has found to be actionable under Title VII.  The allegedly harassing conduct (comments and touching) occurred over the course of almost two years, and it is unclear from the record when in that two-year period the two complained of incidents of physical touching occurred.  Otherwise, the incidents appear to be isolated and non-severe, especially with respect to the incident involving plaintiff's chest as plaintiff failed even to raise the matter in response to defendant's motion.[197]

Importantly, defendant presents summary judgment evidence that plaintiff's ability to complete her job duties was not impacted by Johnson's behavior,[198] which plaintiff does not contest.  This undisputed fact—pertinent to whether the unwelcome conduct would "interfere

---

frequent—may be sufficiently severe to constitute sexual harassment, it must be 'extremely serious' in order to 'amount to discriminatory changes in the terms and conditions of employment'" (quoting Lauderdale, 512 F.3d at 163 (internal punctuation and citation omitted)).

[197]  See Shepherd, 168 F.3d at 872 (over course of "almost two years," touching arm on several occasions, rubbing one hand from plaintiff's shoulder to her wrist while standing beside her found not to be severe or pervasive conduct).  Defendant raised the incident involving Johnson's head on plaintiff's chest in its motion, docket no. 19 at 13, but plaintiff did not address the incident in her response.

[198]  Docket no. 19 at 3 ("Plaintiff concedes that the alleged harassment never interfered with her job duties or her ability to get the job done.") (citing app. at APX0025, APX0027 (pl.'s depo. at 263-64, 271) (plaintiff agreed she would perform her job responsibilities regardless of Johnson's comments, and agreed that "one way or another" she was able "to get the information [she] needed to do [her] job," whether the information came from Johnson or a co-worker)).

unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace"—weighs against finding the conduct severe or pervasive and thus actionable under Title VII.[199]  This may be a close case.  But, reviewing the totality of the circumstances, including that the alleged conduct occurred over the course of almost two years, the court cannot conclude the conduct complained of rose to the level of severity and pervasiveness the Fifth Circuit has found to affect terms, conditions, or privileges of employment.[200]  The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[201]  The Court concludes plaintiff has failed to raise a genuine issue of material fact as to whether the alleged harassment affected a term, condition, or privilege of

---

[199] Stewart, 586 F.3d at 330-31 (statements that supervisor and plaintiff should be "sweet" to each other and supervisor's stating that he loved plaintiff which occurred every few days for one month would not interfere unreasonably with a reasonable person's work performance) (citations omitted); Shepherd, 168 F.3d at 874 (sexual teasing and some touching over a period of two years was "not severe" because it was "not the type of extreme conduct that would prevent [the plaintiff] from succeeding in the workplace").

[200] Compare Hockman, 407 F.3d at 328 (comments to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff were not severe as a matter of law); and Shepherd, 168 F.3d at 872-75 (workplace environment not altered by: co-worker's comments that "your elbows are the same color as your nipples," and "you have big thighs" while he simulated looking under plaintiff's dress; co-worker standing over plaintiff's desk on several occasions and trying to look down her clothing; co-worker "touch[ing plaintiff's] arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her;" and on two occasions, co-worker "patt[ing] his lap and remark[ing], 'here's your seat'" when plaintiff arrived late to a meeting); with Harvill, 433 F.3d at 435-36 (during seven-month period, grabbing and kissing plaintiff on the cheek, popping rubber bands at plaintiff's breasts, fondling plaintiff's breasts "numerous times," patting plaintiff on her buttocks "numerous times," and rubbing body against plaintiff from behind, despite plaintiff's protests on every occasion, found to constitute severe and pervasive conduct).

[201] Faragher, 524 U.S. at 788, 118 S. Ct. at 2284.

plaintiff's employment.[202]   Accordingly, defendant's motion for summary judgment is **granted**, and plaintiff's claim for hostile environment sexual harassment is **dismissed**.

### B.   vicarious liability

#### 1.   Johnson

An employer can avoid vicarious liability for the harassing conduct of an employee under certain circumstances.  In a hostile environment sexual harassment case, if the employee is a *co-worker* of the plaintiff, an employer will be vicariously liable for the co-worker's harassment if the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[203]  If, on the other hand, the employee is the plaintiff's *supervisor*, the employer can only avoid vicarious liability if the employer can establish both prongs of the Ellerth/Faragher affirmative defense: (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.[204]

Notwithstanding whether Johnson's conduct affected a term, condition, or privilege of

---

[202]   Plaintiff also argues Johnson and Lopez's conduct was severe and pervasive "under the []continuing violation doctrine" as "[n]ot only did one supervisor sexually harass her, a second one continued suit."  Docket no. 20 at 18.  The Court has considered the totality of the conduct of defendant's employees alleged by plaintiff, but any arguments concerning the "continuing violation doctrine" are inapposite.  The continuing violation doctrine is an equitable exception to the 180-day limitation on the period in which a plaintiff must file a charge of discrimination with the EEOC; the "exception arises '[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'"  Waltman v. Int'l Paper Co., 875 F.2d 468, 474 (5th Cir. 1989) (quoting Abrams v. Baylor Coll. of Medicine, 805 F.2d 528, 532 (5th Cir. 1986)).

[203]   Septimus, 399 F.3d at 611; Ramsey, 286 F.3d at 268.

[204]   Wyatt, 297 F.3d at 409 (citing Casiano, 213 F.3d at 284).

plaintiff's employment, defendant argues it "is not vicariously liable for Johnson's conduct because[] defendant took prompt corrective action, and Johnson did not take any tangible employment action against plaintiff."[205]   Plaintiff argues there is a genuine issue of material fact as to whether defendant took prompt corrective action upon learning of the complaints about Johnson, but plaintiff also argues various aspects of the Ellerth/Faragher defense with respect to Johnson's conduct.[206]   Thus, before determining whether plaintiff has demonstrated a genuine issue of material fact as to vicarious liability for Johnson's conduct, the Court must first determine whether plaintiff has demonstrated there is a genuine issue of material fact as to whether Johnson was plaintiff's supervisor.   Plaintiff has the *prima facie* burden of proving Johnson was her supervisor in a hostile environment sexual harassment case.[207]

---

[205]   Docket no. 19 at 13, 13-15.   Defendant's argument that Johnson did not take any tangible employment action against plaintiff appears to be directed to whether plaintiff can establish a *quid pro quo* sexual harassment claim.   "In a *quid pro quo* suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted."   Wyatt, 297 F.3d at 409 (italics added).

[206]   See e.g., docket no. 20 at 10 ("A genuine issue of material fact exists on whether Defendant is vicariously liable for Johnson's behavior because Defendant did not take prompt corrective action and whether Defendant's sexual harassment program was effective or a paper tiger considering Defendant's managers' advice to plaintiff that if she complained she would be fired.").

[207]   See Indest, 168 F.3d at 805 (Wiener, J., specially concurring) (in hostile work environment claims, when plaintiff "meets his burden of proving that (1) the defendant is his employer; (2) the harasser is a supervisor, (3) he was sexually harassed by the supervisor, and (4) the supervisor's conduct is actionable, *i.e.*, produces a work environment that is either severe or pervasive, the employer is subject to vicarious liability," unless employer can prove affirmative defense); Miller v. N. Miss. Med. Clinics, Inc., No. 1:07cv25, 2008 WL 2699802, at *3 (N.D. Miss. Jun. 30, 2008) ("[I]t does seem clear that plaintiff has the burden of proving [the harasser] was her supervisor . . . .") (citing Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003)).

In her original complaint, plaintiff complains of "sexual harassment by the upper management" but does not identify the alleged perpetrators of the harassment.[208]  Defendant does not concede Johnson was plaintiff's supervisor, and neither defendant's argument nor its summary judgment evidence demonstrate Johnson was plaintiff's supervisor.  In argument in the motion, defendant states:

- plaintiff complains of "sexual harassment by two different *co-workers*;"[209]

- plaintiff "was employed as a salesperson/assistant manager" at Springfield Meadows and Johnson was the "manager;"[210]

- plaintiff alleges in her original complaint she was harassed by "upper management," but plaintiff "conceded in her deposition that Michael Johnson had no authority to hire or fire employees;"[211]

- "staffing" at Springfield Meadows was "minimal, and consisted of Plaintiff, Michael Johnson," and two others;[212]

- plaintiff bought Johnson "a little gift for Boss['s] Day;"[213] and

- plaintiff was told by "other employees" she should follow "the company's policies and procedures and contact *supervisor* Randal Brooks" concerning Johnson's conduct.[214]

---

[208]  Docket no. 1.

[209]  Docket no. 19 at 1 (emphasis added).

[210]  Id. at 2.

[211]  Id. at 2 n.2.

[212]  Id.

[213]  Id. at 4.

[214]  Id. (emphasis added).  Notably, defendant also argues an "employer is sometimes vicariously liable for a *supervisor's* sexually harassing behavior, but in the Fifth Circuit, an employer cannot be held liable when it takes prompt and appropriate remedial action in response to the complainant's allegations of harassment."  Id. at 13 (emphasis added).  But, the three Fifth

The summary judgment evidence shows:

- defendant's director of human resources, Jean Gonzales, testified that defendant "keeps a very small staff at each community," and "[d]uring Plaintiff's employment at the Springfield Meadows location, the only staff employed there were Michael Johnson, [plaintiff]," and two others;[215]

- plaintiff testified at her deposition that she agreed she "underst[oo]d that [Johnson] needed approval above him before he could make any hire,"[216] and referring to that testimony, testified through the errata sheet that "This is what Mr. Johnson told me.  I have no personal knowledge of that;"[217]

- plaintiff testified at her deposition that she agreed she "understood that [Johnson] didn't have the ability to hire and fire on his own,"[218] and referring to that testimony, testified through the errata sheet that "I understood that Mr. Johnson could recommend my termination to someone."[219]

Plaintiff presents no summary judgment evidence demonstrating Johnson had any

supervisory authority over her.  In the portion of her response entitled "undisputed material

facts," plaintiff recites that "[t]he sexual harassment came at the hands of her supervisor," "[t]he

Plaintiff was subjected to sexual harassment by her supervisor Michael Johnson," and "[t]he

---

Circuit cases defendant cites and discusses in support of this position are inapposite: Carmon, 17 F.3d at 794-95, and Dornhecker, 828 F.2d at 309, concern *co-worker*, not *supervisor*, harassment; and Indest, 164 F.3d at 266 (Jones, J.), is not precedent because neither the Court's opinion nor the concurrence received a quorum of the three-judge panel hearing the appeal.  See Indest v. Freeman Decorating, Inc., 168 F.3d 795, 796 n.12 (Feb. 26, 1999) (Wiener, J., specially concurring) ("Because Judge Ferguson concurs only in the judgment of this case without concurring in Judge Jones's opinion or mine, neither enjoys a quorum and thus neither writing constitutes precedent in this Circuit.").

[215]  Docket no. 19, app. at APX0095 (Gonzales aff. at 1, ¶3).

[216]  Id., app. at APX0004 (pl.'s depo. at 120).

[217]  Docket no. 20, app. at pl.'s depo. at 120 as amended by errata sheet.

[218]  Docket no. 19, app. at APX0004 (pl.'s depo. at 120).

[219]  Docket no. 20, app. at pl.'s depo. at 120 as amended by errata sheet.

Plaintiff complained of the sexual advances and sexual harassment of her supervisor Michael

Johnson," but those statements are not supported by any summary judgment evidence.[220]  There

is no summary judgment evidence that Johnson: had hiring, firing, promoting, demoting, or

transferring authority; recommended termination of plaintiff's employment; otherwise had

authority to affect the terms and conditions of plaintiff's employment; controlled plaintiff's

hours, work assignments, or other day-to-day work activities; or conducted performance

evaluations or reviews of plaintiff.[221]  Furthermore, plaintiff presents no argument or legal

---

[220]  Docket no. 20 at 2.

[221]  Just recently, the Supreme Court held "that an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered to take tangible employment actions against the victim," that is, "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Vance v. Ball State Univ., No. 11-556, 570 U.S. __, __ S. Ct. __, slip op. at 2, 9 (Jun. 24, 2013).  Prior to Vance, the Fifth Circuit had recognized competing tests used by other Courts of Appeal to determine whether an individual was a supervisor for purposes of Title VII, but did not indicate which test would be used in this circuit.

> Different standards apply to sexual harassment by a supervisor than by a co-worker.  See Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 409-11 (5th Cir. 2002) (applying Faragher/Ellerth test).  Courts have also adopted different tests for determining whether an employee is a supervisor or a co-worker.  Compare Parkins v. Civ. Constr. of Ill., 163 F.3d 1027, 1034 (7th Cir. 1998) (individual considered supervisor if he has "the authority to affect the terms and conditions of the victim's employment") with Mack v. Otis Elevator Co., 326 F.3d 116, 126-27 (2d Cir. 2003) (rejecting Parkins' test and holding that individual may be considered a supervisor if he has authority to direct employee's day-to-day work activities).  Under either approach, Kirkum cannot be considered a supervisor under Title VII, as there is no evidence that he had control over either Plaintiffs-Appellants' daily work activities or the tangible conditions of their employment.

McCullough, 212 Fed. App'x at 283 n.5.  The Supreme Court in Vance endorsed the Seventh Circuit's approach.  No. 11-556, slip op. at 8-9.

authority to show plaintiff's subjective understanding that Johnson could recommend her termination to defendant qualifies Johnson as plaintiff's supervisor.  Indeed, plaintiff's summary judgment evidence and argument does not distinguish between a tenant or customer of defendant who may be able to recommend the termination of plaintiff's employment, and the "authority" of Johnson to recommend termination.  In sum, plaintiff has failed to show there is a genuine issue of material fact that Johnson was plaintiff's supervisor.  Accordingly, the Court analyzes defendant's vicarious liability for Johnson's conduct for a hostile environment sexual harassment claim under the *co-worker* framework.

The fifth element of a *prima facie* claim for sexual harassment based on a hostile work environment perpetrated by a *co-worker* is that the employer knew or should have known of the conduct and failed to take prompt, remedial action.[222]  Defendant contends plaintiff cannot show defendant failed to take prompt remedial action upon learning of Johnson's alleged harassment.[223]  To avoid summary judgment, plaintiff must produce some evidence demonstrating a genuine issue of material fact on this element.

"'Prompt remedial action' must be 'reasonably calculated' to end the harassment."[224]  Whether certain action is sufficient to permit an employer to avoid liability requires a contextual analysis:

> What is appropriate remedial action will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness

---

[222] Septimus, 399 F.3d at 611; Ramsey, 286 F.3d at 268.

[223] Docket no. 19 at 13-15.

[224] Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 615 (5th Cir. 1999) (quoting Jones v. Flagship Int'l, 793 F.2d 714, 719-20 (5th Cir. 1986)).

of any initial remedial steps. . . .  Not every response by an employer will be
sufficient to discharge its legal duty.  Rather, the employer may be liable despite
having taken remedial steps if the plaintiff can establish that the employer's
response was not "reasonably calculated" to halt the harassment.[225]

Plaintiff does not dispute defendant's summary judgment evidence that, through Brooks,
plaintiff's regional supervisor, defendant began its investigation of plaintiff's complaints the day
after hearing of the problem; defendant issued a written "corrective action notice" to reprimand
Johnson within eleven days of the date the investigation began; plaintiff was transferred to a
more convenient location—the community in which she lived—to separate her from Johnson;
and plaintiff's salary, position, and commission were unchanged by the transfer.[226]  Rather,
plaintiff argues defendant did not "seriously investigate Plaintiff's complaints" because the
regional manager did not listen to all of plaintiff's audio recordings, stated that he "always say[s]
nice things to [his] co-workers" when speaking with plaintiff about the complaints, "failed to
strongly reprimand the perpetrating supervisors during the plaintiff's employment," and moved
plaintiff to a new work location instead of moving Johnson.[227]

Plaintiff has not raised a genuine issue of material fact that defendant's actions were not
reasonably calculated to end the harassment.  Importantly, the Fifth Circuit considers whether the
harassment actually stopped in determining whether a given response constituted prompt

---

[225] Id. (quoting Waltman, 875 F.2d at 479 (citations omitted)).

[226] Docket no. 19 at 14-15, and app. at APX0092 (Brooks aff. at 1, ¶¶ 3-4), and
APX0003-4 (pl.'s depo. at 114-16, 118, 120-121).

[227] Docket no. 20 at 17-18.

remedial action.[228]  Plaintiff testified at her deposition that after she was transferred from Springfield Meadows to Creston Ridge she did not have to work with or see Johnson anymore, and she had no further problems with him.[229]  In addition, the Fifth Circuit has approved changing the plaintiff's work assignments, as opposed to the alleged harasser's, as appropriate remedial action,[230] and plaintiff has not provided any legal authority to support her contrary position.

Furthermore, plaintiff does not provide any legal authority in support of her apparent argument that Brooks' method of investigating Johnson's complained of conduct (that is, what Brooks reviewed and his demeanor when he received the complaint) affects the actual remedial action taken (that is, the written reprimand for Johnson and transferring plaintiff to a desirable work location).  Plaintiff also does not explain what it means for defendant to have "failed to strongly reprimand" Johnson, given defendant's summary judgment evidence that Johnson received a written reprimand and Johnson's harassing conduct actually stopped following the reprimand and plaintiff's transfer.[231]

Plaintiff has failed to raise a genuine issue of material fact that defendant failed to take

---

[228]  Skidmore, 188 F.3d at 616 (citing Indest, 164 F.3d at 263; Waymire v. Harris Cnty., 86 F.3d 424, 429 (5th Cir.1996); Dornhecker, 828 F.2d at 309-10).

[229]  Docket no. 19, app. at APX0005 (pl.'s depo. at 123-24).

[230]  Skidmore, 188 F.3d at 611, 616 (holding employer's response of moving plaintiff from physical location and changing plaintiff's shift constituted prompt remedial action).

[231]  See id. at 616 (finding employer's response constituted "prompt remedial action" as a matter of law where supervisor instructed harasser to leave plaintiff alone and moved plaintiff to new shift and harassment did in fact end, "despite the fact that [supervisor] did not conduct any investigation of allegations until after [EEOC complaint filed], did not reprimand [harasser], and made no follow-up inquiry with [plaintiff] as to whether the harassment had ceased.").

prompt remedial action in response to hearing complaints of Johnson's conduct.  Accordingly, plaintiff cannot meet her *prima facie* burden for a claim of hostile environment sexual harassment against a co-worker.  Accordingly, defendant's motion for summary judgment is **granted**, and plaintiff's Title VII claim of hostile environment sexual harassment due to Johnson's conduct is **dismissed**.

### 2.    Lopez

In contrast to Johnson, the parties do not dispute that Lopez was plaintiff's supervisor at the time of the alleged harassment.  Defendant submits summary judgment evidence that "Lopez became Plaintiff's supervisor at Creston Ridge,"[232] and plaintiff does not contest the issue.  Defendant argues it is not vicariously liable for Lopez's conduct because it has established the Ellerth/Faragher defense.[233]

The Fifth Circuit has explained the methodology for analyzing a supervisor harassment claim:

> First we determine whether the complaining employee suffered a "tangible employment action."  If he has, the claim is classified as a "quid pro quo" case; if he has not, the claim is classified as a "hostile environment" case.  In a quid pro quo suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted.  In a hostile environment case, however, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment: If the conduct was not severe or pervasive, the employer cannot be held liable vicariously for the supervisor's actions; if the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive Ellerth/Faragher affirmative defense—the only affirmative defense to vicarious liability now available in a supervisor sexual harassment hostile work environment case.  To establish this defense, the

---

[232]  Docket no. 19 at 5, and app. at APX0095 (Gonzales aff. at 1, ¶5).

[233]  Id. at 16-17.

employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.[234]

Plaintiff's original complaint recites a claim for "constructive discharge."[235]  "In certain circumstances, a constructive discharge can be considered a tangible employment action that precludes an employer from asserting the Ellerth/Faragher defense to vicarious liability."[236]  In its motion, defendant acknowledges plaintiff's pleading of constructive discharge, asserts "it is undisputed that Defendant terminated [plaintiff's] employment on August 25, 2011," and argues "[c]learly, [it] isn't Plaintiff's position" that the "working conditions were so intolerable that a reasonable employee would have felt compelled to resign."[237]  The Court construes defendant's argument as a no evidence motion for summary judgment on plaintiff's constructive discharge claim.

"Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment."[238]

The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.  Whether an employee would feel forced to resign is case- and fact-specific, but this Court considers the following factors relevant, singly or

---

[234]  Wyatt, 297 F.3d at 409 (citing Casiano, 213 F.3d at 283-84 and attached appendix).

[235]  Docket no. 1 at 3.

[236]  Aryain, 534 F.3d at 480 (citations omitted).

[237]  Docket no. 19 at 1 n.1 (citing Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001), cert. denied, 534 U.S. 817, 122 S. Ct. 45 (2001)).

[238]  Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004).

in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger or less experienced/qualified supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.[239]

"A plaintiff alleging that sexual harassment alone compelled her to resign must present 'something more' than what is required to establish a harassment or hostile work environment claim."[240]  Plaintiff does not respond at all to defendant's arguments concerning constructive discharge.  Nor does plaintiff submit any summary judgment evidence to demonstrate a genuine issue of material fact on plaintiff's alleged constructive discharge.  Accordingly, defendant's no evidence motion for summary judgment on plaintiff's constructive discharge claim is **granted**, and plaintiff's claim for constructive discharge is **dismissed**.

Finding no genuine issue of material fact with respect to a tangible employment action, the Court next considers defendant's assertion of the Ellerth/Faragher defense to vicarious liability for Lopez's conduct.  Defendant argues, notwithstanding whether the conduct constituted severe and pervasive sexual harassment, it is not vicariously liable for Lopez's conduct because it exercised reasonable care to prevent and correct sexual harassment, and "plaintiff completely failed to avail herself of [defendant's] procedures for reporting and

---

[239] Id. at 649-50 (quoting Jurgens v. EEOC, 903 F.2d 386, 390 (5th Cir. 1990); Brown, 237 F.3d at 566).

[240] Aryain, 534 F.3d at 480 (quoting Suders, 542 U.S. at 147, 124 S. Ct. at 2354, citing Harvill, 433 F.3d at 440).  See Nassar v. Univ. of Tex. Sw. Med. Ctr., 674 F.3d 448, 453 (5th Cir. 2012) ("When considering the aggravating factors, it cannot be said that there was sufficient proof to show that Nassar's working conditions were so intolerable that a reasonable employee would feel compelled to resign" (punctuation and citations omitted)), vacated and remanded on other grounds, No. 12-484, 570 U.S. __, __ S. Ct. __ (Jun. 24, 2013).

correcting harassment."[241]  To meet its burden, defendant presents evidence of: its anti-harassment policy contained in its employee handbook, plaintiff's signed acknowledgment that she read and understood the handbook, sexual harassment training that defendant conducts on a regular basis, and plaintiff's completion of such training twice during her employment.[242]  In addition, defendant presents evidence showing that: plaintiff did not report Lopez's alleged harassment in the method described in the employee handbook,[243] and plaintiff did not complain of any harassment after she was transferred from Springfield Meadows to Creston Ridge, where Lopez became plaintiff's supervisor.[244]  With this evidence, defendant established the elements of the Ellerth/Faragher affirmative defense.

In response, plaintiff argues defendant is foreclosed from relying on the Ellerth/Faragher affirmative defense because it was not pleaded in defendant's answer.[245]  As discussed, defendant's original answer adequately pleaded the defense, and defendant has been permitted to amend its answer.[246]

Plaintiff also argues in her response that defendant was put on notice of *Johnson's* conduct because plaintiff discussed the alleged harassing behavior with "numerous property

---

[241]  Docket no. 19 at 16-17.

[242]  Docket no. 19, app. at APX0013-14 (pl.'s depo. at 194, 198-200), APX0096 (Gonzales aff. at 2, ¶11).

[243]  Id., app. at APX0006, APX0013 (pl.'s depo. at 127-128, 194, 196).

[244]  Id., app. at APX0008, APX 0011-12 (pl.'s depo. at 148-49, 164-66).

[245]  Docket no. 20 at 23.

[246]  See supra Part VI.A.

managers,"[247] and their knowledge was imputed to defendant because they were "at a sufficiently

high level in the company's management hierarchy to qualify as a proxy for the company" or

were "officials charged with duty to act on the knowledge and stop the harassment."[248]

Importantly, the summary judgment evidence cited by plaintiff in support of these arguments is

related to *Johnson's* conduct, not *Lopez's* conduct.[249]  The only summary judgment evidence

reflecting any complaint plaintiff made about Lopez was "that because she lived in the

community he expected her to be on call 24/7,"[250] which clearly does not support a hostile

environment sexual harassment claim.

Plaintiff also appears to argue defendant is vicariously liable for *Lopez's* conduct because

Lopez attended plaintiff's deposition as defendant's corporate representative.[251]  The transcript of

plaintiff's deposition confirms Lopez attended as defendant's corporate representative.[252]  But,

---

[247]  Docket no. 20 at 14-15.

[248]  Id. at 15-18.

[249]  Id. at 14-15, and app. at attachments to def.'s initial disclosures (statement of Sandra Arispe that plaintiff "had issues with Mr. Michael Johnson;" statement of Crystal Stuart that plaintiff "was not comfortable working with Michael Johnson" and "he would say [things that] made her uncomfortable;" statement of Merilee Wood that plaintiff "alluded to the fact that there was something inappropriate going on between her and Michael").  Plaintiff's other summary judgment evidence concerning reporting harassing conduct was also related to Johnson.  Docket no. 20 at 8, 10-11, and app. at pl.'s depo. at 359-60 (plaintiff spoke to Monroe Hogart about Johnson), at 371-73 (plaintiff spoke to Sandra Arispe and Yvonne Luna about Johnson), at 203, 205, and 207 (plaintiff spoke to Brooks about Johnson).

[250]  Docket no. 20, app. at attachments to def.'s initial disclosures (statement of Merilee Wood).

[251]  Docket no. 20 at 15.

[252]  Docket no. 19, app. at APX0012 (pl.'s depo. at 166-67 (plaintiff's counsel identifies Lopez as being in attendance and asks, "And what is his position? Is he the corporate representative for [defendant]?" and defendant's counsel responds, "He is for today's

there are few limitations on who can attend a deposition as a party's corporate representative,[253]
and plaintiff has cited no legal authority to show Lopez's appearance at plaintiff's deposition as
defendant's corporate representative automatically imputes Lopez's purportedly harassing actions
to defendant for purposes of vicarious liability.

Thus, plaintiff has failed to raise a genuine issue of material fact that defendant is not
entitled to the Ellerth/Faragher affirmative defense.  Accordingly, defendants' motion for
summary judgment is **granted** and plaintiff's Title VII claim of hostile environment sexual
harassment due to Lopez's conduct is **dismissed**.

### iii.    *quid pro quo* sexual harassment claim

Title VII recognizes *quid pro quo* claims for sexual harassment, in which "the grant or
denial of employment advancement, such as a promotion or raise, depends upon whether an
employee acquiesces to unwelcome sexual advances, requests for sexual favors, or other verbal
or physical conduct of a sexual nature."[254]  "In a *quid pro quo* suit, proof that a tangible
employment action resulted from a supervisor's sexual harassment renders the employer

---

deposition.")).

[253]  See In re Shell Oil Refinery, No. 88-1935, 88-2719, 136 F.R.D. 615, 616-18 (E.D.La.
May 16, 1991) (together, Federal Rule of Evidence 615 and Federal Rule of Civil Procedure
26(c), permit the exclusion of a party from a deposition upon showing of good cause).

[254]  Donaldson v. CDB, Inc., 335 Fed. A'ppx 494, 500 (5th Cir. Jul. 9, 2009) (discussing
Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66, 106 S. Ct. 2399, 2404-05 (1986)).  See
FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (2006), instruction nos. 11.4.1 ("Title VII, sex
discrimination, supervisor sexual harassment without tangible employment action (hostile work
environment)"), 11.4.2 ("Title VII, sex discrimination, supervisor sexual harassment resulting in
tangible employment action (*quid pro quo*)"), 11.4.3 ("Title VII, sex discrimination, co-
worker/direct and non-direct supervisory/third-party sexual harassment (hostile work
environment)").

vicariously liable, and no affirmative defense can be asserted."[255]

The only factual allegations in plaintiff's original complaint which would indicate a claim for *quid pro quo* sexual harassment are those stated under the heading "constructive discharge."[256]  To the extent plaintiff's claim for constructive discharge is related to any claim for *quid pro quo* sexual harassment plaintiff may have described in her original complaint, plaintiff's failure to demonstrate a genuine issue of material fact as to constructive discharge—discussed above—precludes her from pursuing a Title VII *quid pro quo* harassment claim.

In addition, defendant argues it is not vicariously liable for Johnson's conduct because Johnson did not take any tangible employment action against plaintiff.  Plaintiff has neither responded to this argument nor presented summary judgment evidence to demonstrate there exists a genuine issue of material fact on any tangible employment action taken against plaintiff.  Accordingly, plaintiff's claim for *quid pro quo* sexual harassment, to the extent one has been stated, is **dismissed**.

### 2.      retaliation

#### a.      summary of arguments

Defendant also makes a no evidence motion for summary judgment on plaintiff's retaliation claim.[257]  Defendant argues plaintiff cannot meet her *prima facie* burden for a retaliation claim because plaintiff has no evidence of a causal connection between plaintiff's complaint of sexual harassment and "the much later termination of her employment," and

---

[255]  Wyatt, 297 F.3d at 409 (italics added).

[256]  See docket no. 1 at 2-4.

[257]  Docket no. 1-2, 17-21.

plaintiff has no evidence that defendant's stated reason for her discharge was a pretext for retaliation.[258]

With respect to causation, defendant argues and presents summary judgment evidence that "it was impossible for [plaintiff] to have engaged in any 'protected conduct' after her transfer to Creston Ridge" because plaintiff complained of harassment by Johnson before she was transferred, and she never reported any harassment by Lopez after she was transferred.[259] Rather, defendant argues plaintiff's employment was terminated because plaintiff "went out on leave . . ., received short-term disability, and then began long-term disability;" there was no expectation of when plaintiff would return from long-term disability; her primary care physician had "returned her to work" multiple times and she did not return to work; and defendant had "held her job open for four months."[260]  Defendant contends "[t]hese circumstances may not reasonably be read as tying her eventual termination to conduct which she reported, and to which Defendant immediately responded, *more than a year before*."[261]  Defendant further argues that "[e]ven if her discharge were closer to the date of her complaint about Johnson, the mere timing of Plaintiff's discharge is not sufficient circumstantial evidence of causation to raise a fact issue."[262]

With respect to pretext, defendant argues it has a legitimate, non-discriminatory reason

---

[258] Id. at 18-21.

[259] Id. at 19.

[260] Id.

[261] Id. (emphasis in original).

[262] Id. at 19-20.

for terminating plaintiff's employment—"her inability to return to work"—and plaintiff's claim "must fail at the pretext stage" because "[t]iming alone cannot establish pretext."[263]  Plaintiff does not respond to defendant's arguments concerning her retaliation claim.

       **b.**    **analysis**

When, as here, circumstantial evidence forms the basis of the retaliation claim, the burden-shifting framework is applicable.[264]  Under the <u>McDonnell Douglas</u> framework, a plaintiff must first carry the initial burden of establishing a *prima facie* case of retaliation.[265]  If plaintiff meets this burden, a rebuttable presumption arises that the employer unlawfully retaliated against plaintiff.[266]  The burden then shifts to the defendant to present evidence that it treated plaintiff in a certain way for a legitimate, nonretaliatory reason.[267]  Once the defendant satisfies this second part of the analysis, the presumption raised by the *prima facie* case is rebutted and dropped from the case.[268]  The third step of the analysis shifts the burden to plaintiff to prove that the reason articulated by the employer was a mere pretext for retaliation; that is, plaintiff has the burden of showing that the protected activity "was a 'but for' cause of the

---

[263]  <u>Id.</u> at 20 (citing <u>Pennington v. Tex. Dep't of Family & Protective Serv.'s</u>, 469 Fed. App'x 332, 338 (5th Cir. Mar. 29, 2012); <u>Hernandez v. Yellow Transp., Inc.</u>, 670 F.3d 644, 657 (5th Cir. 2012); <u>Strong v. Univ. Health Care Sys., L.L.C.</u>, 482 F.3d 802, 808 (5th Cir. 2007); <u>Roberson v. Alitel Info. Serv.'s</u>, 373 F.3d 647, 656 (5th Cir. 2004)).

[264]  <u>Fabela v. Socorro Indep. Sch. Dist.</u>, 329 F.3d 409, 415 (5th Cir. 2003).

[265]  <u>Patterson</u>, 491 U.S. at 186-87, 109 S. Ct. at 2378; <u>Burdine</u>, 450 U.S. at 252-53, 101 S. Ct. at 1093-94.

[266]  <u>Patterson</u>, 491 U.S. at 187, 109 S. Ct. at 2378; <u>Burdine</u>, 450 U.S. at 253, 101 S. Ct. at 1093.

[267]  <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507, 113 S. Ct. at 2747.

[268]  <u>Id.</u> at 507, 516-17, 113 S. Ct. at 2747, 2752-53.

adverse employment decision."[269]

Plaintiff has not responded to defendant's motion on her retaliation claim, and has not come forward with some evidence to raise a genuine issue of material fact on any element of her *prima facie* case for a Title VII retaliation claim. Accordingly, defendant's no evidence motion for summary judgment is **granted**, and plaintiff's Title VII retaliation claim is **dismissed**.

### 3. intentional infliction of emotional distress

#### a. summary of arguments

Defendant also makes a no evidence motion for summary judgment on plaintiff's Texas state law claim for intentional infliction for emotional distress ("IIED").[270] Citing Texas law, defendant argues plaintiff's claim is preempted by federal law because "'the tort of IIED was judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress'" and "Plaintiff alleges no extreme and outrageous conduct unrelated to her sexual harassment claims" that are covered by Title VII.[271] Defendant also argues plaintiff has no evidence of "extreme and outrageous" conduct by defendant which would support an IIED claim, asserting that "Plaintiff's allegations of offensive utterances and rude behavior fall far short of the extreme standard needed to establish an infliction of emotional

---

[269] <u>Gollas v. Univ. of Tex. Health Sci. Ctr. at Houston</u>, 425 Fed. App'x 318, 322, 324 (5th Cir. May 12, 2011) (citing <u>Strong</u>, 482 F.3d at 806); <u>Long v. Eastfield Coll.</u>, 88 F.3d 300, 304-05, 305 n.4 (5th Cir. 1996).

[270] Docket no. 19 at 21-23.

[271] <u>Id.</u> at 21-22.

distress claim."[272]  Plaintiff does not respond to defendant's motion for summary judgment on her intentional infliction of emotional distress claim.

            **b.**        **analysis**

In addressing a claim for intentional infliction of emotion distress, the Fifth Circuit has recognized that "if sexual harassment underlies an employee's common law tort claims against [her] employer, then those claims are preempted under Texas law by the Texas Commission on Human Rights Act, regardless of whether the plaintiff brings an action under the Act."[273] Plaintiff has not respond to defendant's motion for summary judgment on her state law tort claim, and has not come forward with any evidence to raise a genuine issue of material fact on her claim.  Accordingly, defendant's no evidence motion for summary judgment is **granted**, and plaintiff's state law claim for intentional infliction of emotional distress is **dismissed**.

          **D.**     **Defendant's Request for Oral Argument**

Without supporting argument, defendant requests oral argument on its motion for summary judgment.[274]  The Court has reviewed the entire record, including the evidence provided in support of the motion.  Defendant has not demonstrated why oral argument is needed to develop the record for a proper disposition of the case.  Thus, defendant's request for oral

---

[272] Id. at 22-23.

[273] Wiggins v. St. Luke's Episcopal Health Sys., No. 12-20469, 2013 WL 1165213, at *3 (5th Cir. Mar. 21, 2013) (per curiam) (citing Waffle House, Inc. v. Williams, 313 S.W.3d 796, 803 (Tex. 2010)).  See Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 (Tex. 2005) (Under Texas law, intentional infliction of emotional distress is a "'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.  Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill.")

[274] Docket no. 24.

argument is **denied**.

## VII.  CONCLUSION

Based on the foregoing discussion, **IT IS ORDERED** that:

(1)     defendant's amended motion for leave to file a first amended answer[275] is **GRANTED**, and the District Clerk is directed to file defendant's first amended answer tendered as exhibit B to defendant's motion;

(2)     defendant's motion to strike portions of plaintiff's summary judgment evidence or to re-open oral deposition of plaintiff[276] is **DENIED**;

(3)     Defendant's motion for summary judgment[277] is **GRANTED** and plaintiff's causes of action for sexual harassment, retaliation, and constructive discharge in violation of Title VII, and state law intentional infliction of emotional distress are **DISMISSED with prejudice**;

(4)     defendant's request for oral argument on its motion for summary judgment[278] is **DENIED**; and

(5)     The District Clerk is directed to enter judgment for defendant and against plaintiff, each side to bear its own costs.

**ORDERED, SIGNED** and **ENTERED** this 25th day of June, 2013.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[275]  Docket no. 22.

[276]  Docket no. 27.

[277]  Docket no. 19.

[278]  Docket no. 24.